IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | § | |
|---|---|---|
| LEONARD JOVON COULTER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 2:19-CV-164-Z |
| | § | (CRIMINAL ACTION No. 2:16-CR-62) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Before the Court is Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") (ECF No. 2), filed on August 13, 2019. Respondent filed a Response to the Motion with an Appendix in Support. *See* ECF Nos. 7–8. Petitioner filed a Reply. ECF No. 9. For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

Petitioner moves to set aside his sentence under 28 U.S.C. § 2255. On March 22, 2017, Petitioner pled guilty to credit union robbery and aiding and abetting in violation of 18 U.S.C. §§ 2113(a), (g), and using and carrying a firearm during and in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. § 924(c). *See* CR ECF No. 110.[1] Petitioner pleaded guilty solely to counts three and four of the Second Superseding Indictment. *See id.* at 1-2. On July 11, 2017, the Court held a sentencing hearing, and rendered judgment the following day. *See* CR ECF Nos. 158, 170. The Court sentenced Petitioner to 87 months in Bureau of Prisons ("BOP") custody and three years of supervised release as to count three, and 84 months as to count four to run consecutively to

---

[1] Record citations to Petitioner's criminal case, *United States v. Coulter*, 2:16-CR-62-Z-BR shall be to "CR ECF No." throughout this Opinion.

the sentence on count three. CR ECF No. 170. These sentences were also set to run consecutively to pending state court charges. *See id.* Additionally, the Court ordered Petitioner to pay restitution in the amount of $53,519.50. *See id.* On July 25, 2017, Petitioner filed an appeal to the Fifth Circuit Court of Appeals, challenging the legality of the restitution order. *See* CR ECF No. 173. On June 22, 2018, the Fifth Circuit affirmed this Court's judgment and restitution order. CR ECF No. 201.

By his Motion, Petitioner alleges four grounds of constitutional error during his criminal proceedings. ECF No. 2 at 4–5. Petitioner first alleges he is "actually innocent" of the charges, because the credit union was not insured by the National Credit Union Administration Board. *Id.* at 4. Petitioner also alleges he received ineffective assistance from his trial counsel because trial counsel failed to advise him not to accept a guilty plea because he was actually innocent. *Id.* at 5. In ground three, Petitioner alleges his guilty plea was not knowing and voluntary, because it was not constitutionally permissible as he did not understand the elements of the offense. *Id.* at 7. Finally, in ground four, Petitioner alleges the evidence was insufficient for a conviction to establish that credit union robbery is a crime of violence and his conviction on count four must be vacated. *Id.* at 8.

Petitioner signed a Factual Resume as part of his Plea Agreement. *See* CR ECF No. 109. By the Factual Resume, Petitioner admitted to all the essential elements of credit union robbery and using and carrying a firearm in relation to a crime of violence. *Id.* at 2–5. The Factual Resume addresses the elements of each offense and the facts admitted by the Petitioner in support of each element, as follows:

Credit Union Robbery:

*First*: That the defendant intentionally took from the person or presence of another, money;

*Second*: That the money belonged to, or was in the possession of Education Credit Union, **federally insured at the time of the taking**;

*Third*: That the defendant took the money by means of **force or violence** or by means of intimidation.

2

<u>Using and Carrying a Firearm During and in Relation to a Crime of Violence</u>

*First*: That the defendant committed the crime alleged in count three of the second superseding indictment;

*Second*: That the defendant knowingly used and carried a firearm during and in relation to the defendant's alleged commission of the crime charged in count three.

FACTS:

Education Credit Union, at all times material to this factual resume, was a credit union, the accounts of which **were insured by the National Credit Union Administration Board**.

On or about September 23, 2016, in the Amarillo Division of the Northern District of Texas, and elsewhere, **by force and violence, or by intimidation**, Leonard Jovon Coulter did take from the person and presence of employees of Education Credit Union, 1801 FM 2381, Amarillo, Texas, money belonging to, and in the care, custody and control, management, and possession of said Education Credit Union, **the deposits of which were then insured by the National Credit Union Administration Board**.

On or about September 23, 2016, in the Amarillo Division of the Northern District of Texas, and elsewhere, Leonard Jovon Coulter, defendant, did knowingly use or carry a firearm, to wit: a Smith and Wesson M&P, .38 special revolver, serial number CZS4560, during and in relation to a **crime of violence**, that is Credit Union Robbery and Aiding and Abetting, in violation of Title 18, United States Code, Sections 2113(a) and 2, as charged in count three of this indictment, an offense for which he may be prosecuted in a Court of the United States.

*Id.* at 2–5 (emphasis added).

Petitioner also affirmed in open court that no one had threatened him or forced him to plead guilty in this case and that he was pleading guilty voluntarily of his own free will because he was guilty. CR ECF No. 185 at 8–9. Further, the Court reviewed edits made and initialed by the Petitioner to his Factual Resume. *Id.* at 22. In fact, at his rearraignment hearing, Petitioner declared he had no other changes to the Factual Resume and understood all of the facts and allegations. *Id.* Petitioner acknowledged he had read the essential elements of each count and that he was guilty of each of those elements. *Id.* at 23. Petitioner further averred that each fact (included that the Education Credit Union was federally insured) was true. *Id.*

**LEGAL STANDARD**

"Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (internal marks omitted). "[A] defendant is limited to alleging errors of a constitutional or jurisdictional magnitude." *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (internal marks omitted). When alleging issues of jurisdictional or constitutional magnitude for the first time in a Section 2255 motion, a petitioner must show cause for his procedural default in not raising the issue on direct appeal and actual prejudice suffered as a result of the error. *Id.*; *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). Respondent set forth an accurate legal standard analysis for ineffective assistance of counsel claims in the Response to the Motion. *See* ECF No. 7 at 3. The Court incorporates this standard by reference.

**ANALYSIS**

Subsection (g) of 18 U.S.C. § 2113, defining a credit union robbery offense, provides: "As used in this section the term 'credit union' means . . . any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board . . . ." Petitioner asserts several related but independent grounds alleging he is entitled to relief because the Education Credit Union was not insured by the National Credit Union Administration Board ("NCUA") at the time of his offense.

**A. Actual Innocence**

Petitioner argues he is factually innocent of the credit union robbery offense because the Education Credit Union he robbed on September 23, 2016, was not insured by the NCUA at the time of the robbery. Petitioner appears to aver the Education Credit Union was, instead, insured by a private, non-federal insurance company, *to wit:* ProSight Specialty Insurance, the company named in the PSR

and the judgment as the recipient of restitution to be paid. Petitioner concludes that because the Education Credit Union was not federally insured by the NCUA, his robbery was not a federal criminal offense. Therefore, Petitioner argues he is actually innocent of the charged offense.

As background, the NCUA is a federal agency created by the Federal Credit Union Act in 1934 to charter, supervise, and regulate member credit unions. In addition to its supervisory responsibilities, the NCUA administers a revolving fund within the United States Department of the Treasury, providing federal insurance coverage to credit union members. Such coverage is issued solely to protect individual depositors' account monies in the event of the credit union's *financial failure*. *See generally* www.ncua.gov (last accessed August 19, 2022). By contrast, monies taken from a credit union during a robbery or other theft are taken from the credit union, not the individual depositors. In such a case, the credit union typically has separate private insurance that pays out to the credit union itself, not the depositors.[2]

Here, Petitioner acknowledged in his Factual Resume and admitted in open court at rearraignment that the Education Credit Union was federally insured by the NCUA at the time of the robbery. CR ECF No. 109 at 2–5. The PSR detailed that the Education Credit Union "has been a member of the National Credit Union Administration (NCUA) since March 7, 1935" and "has been insured by the NCUA since April 16, 1991." CR ECF No. 127-1 at 8. Petitioner did not object to these findings in the PSR, nor did Petitioner assert that the Education Credit Union was not federally insured by the NCUA in his appeal. CR ECF Nos. 130, 173.

---

[2] *See generally* Peter I. Broeman, *An Overview of the Financial Institution Bond, Standard Form No. 24,* 110 BANKING L.J. 439, 439–40 (1993) (stating an insurance policy known in the banking and insurance industries as a "banker's blanket bond" is a "two-party agreement between the underwriter and the insured financial institution to which the underwriter agrees to indemnify the insured against loss sustained by reason of specific perils," *viz.*, loss arising from specified dishonest, fraudulent, or criminal acts); *see also, e.g.*, https://wallethub.com/edu/sa/ncua-fdic-insurance-limits/10877/ (last accessed August 19, 2022) ("Robberies and thefts are treated differently and are not covered by the FDIC or NCUA. When funds are stolen, they are instead covered by a "blanket bond" policy. This type of insurance protects banks and credit unions in cases of embezzlement, defalcation, earthquake, fire, flood, robberies, and other cases in which funds are lost.").

Petitioner now disputes his admissions in open court and the unchallenged PSR findings. The fact that ProSight Insurance may have been an additional, non-federal insurer (and the insurer for the loss incurred as a result of petitioner's robbery of the Education Credit Union) does not mean the Education Credit Union and its depositors were not also federally insured by the NCUA in the event of the credit union's financial failure. Moreover, the NCUA provides an online source available to the public that confirms the PSR's unchallenged finding that the Education Credit Union, a federally insured state-chartered credit union, was a member of the NCUA and insured by the NCUA at the time of the robbery. *See* https://mapping.ncua.gov/ (last accessed August 19, 2022).[3] Nothing in the record supports Petitioner's claim that he is actually innocent of the federal offense of Credit Union Robbery because the credit union he robbed was not federally insured by the NCUA. Petitioner's Reply asserts that the Respondent misrepresented the facts to the Court, but nothing on the NCUA's website indicates that Education Credit Union is not insured by NCUA. *See id.*

---

[3] Credit Union Details
CREDIT UNION NAME: EDUCATION
CHARTER NUMBER: 67494
CREDIT UNION TYPE: FISCU
CREDIT UNION STATUS: Active
CORPORATE CREDIT UNION: No
CREDIT UNION CHARTER YEAR: 1935
CURRENT CHARTER ISSUE DATE: 03/07/1935
DATE INSURED: 04/16/1991
CHARTER STATE: Texas
REGION: 2 - Southern
FIELD OF MEMBERSHIP TYPE: Non-Federal Credit Union
LOW INCOME DESIGNATION: Yes
MEMBER OF FHLB: Yes
ASSETS: $404,525,008
PEER GROUP: 5 - $100,000,000 to less than $500,000,000
NUMBER OF MEMBERS: 32,178
BUSHLAND BRANCH:
1801 S FM 2381
Bushland TX, 79012
P: 806-354-7400
http://www.educationcu.com

### B. IAC – Advising Petitioner to Plead Guilty When Factually Innocent

In a related but independent claim, Petitioner argues trial counsel was ineffective for advising him to plead guilty to the federal criminal offense of Credit Union Robbery when he was actually innocent of the offense. Petitioner again asserts his robbery of the Education Credit Union on September 23, 2016, was not a violation of federal criminal law because the Education Credit Union was not federally insured by the NCUA at the time of the robbery. Petitioner asserts he was prejudiced by counsel's deficient performance, *i.e.*, advising Petitioner to plead guilty to a non-federal criminal offense, because he could not have been convicted of the offense at trial. ECF No. 2 at 5.

As discussed above, Petitioner was not actually innocent of the federal criminal offense of Credit Union Robbery. The Education Credit Union robbed by Petitioner was, in fact, federally insured by the NCUA at the time of the robbery. Petitioner's actions did violate federal criminal statute 18 U.S.C. § 2113. Petitioner has not demonstrated any deficiency on the part of trial counsel in advising him to plead guilty to the September 23, 2016, credit union robbery federal criminal offense, nor has he shown he was prejudiced by trial counsel's advice in this regard. This claim of ineffective assistance of trial counsel is without merit and is likewise **DENIED**.

### C. IAC – Failure to Inform Petitioner of Elements of Offense and Burden of Proof

In another related ineffective assistance of counsel claim, Petitioner asserts trial counsel's performance was deficient because he did not inform Petitioner that the Government had the burden to prove, as an element of the credit union robbery offense, that the Education Credit Union was federally insured by the NCUA at the time Petitioner committed the robbery. Petitioner contends that as a result of counsel's failure to so inform him, he was unaware of this specific element of the offense or of the Government's burden to prove this element. Petitioner concludes he was prejudiced as a result because if counsel had informed him of this element of the offense and the Government's burden of proof (and presumably of the Government's purported inability to meet its burden to show the

7

Education Credit Union was federally insured by NCUA at the time of the robbery), he would not have pleaded guilty to the credit union robbery offense and, subsequently, would not have been convicted of the charged offense.

Initially, the Court finds Petitioner clearly knew of the elements of the credit union robbery offenses with which he was charged, and that the Government had the burden to prove each of these elements to obtain convictions. Consequently, the Court finds Petitioner's allegation that trial counsel did not inform him of the elements of the offenses with which he was charged, and specifically the offense to which he ultimately pled, not to be credible.

Still, assuming counsel failed to specifically inform Petitioner that the Government had the burden to prove the Education Credit Union was federally insured by the NCUA at the time Petitioner committed the robbery and that such failure constituted deficient performance, Petitioner has not shown any prejudice resulting from any such failure. Again, the Government could easily meet its burden of proving this element of the offense. This claim of ineffective assistance of counsel is without merit and is **DENIED**.

### D. Voluntariness of Plea: Actual Innocence, Elements of Offense and Burden of Proof

To be constitutionally valid, a guilty plea must be knowing and voluntary. *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). A plea is intelligently made when the criminal defendant has "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (*quoting Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

Petitioner appears to assert his guilty plea to the September 23, 2016, credit union robbery offense was unknowing and involuntary because he was not aware, at the time of his guilty plea, that he was factually innocent of the offense. That is, Petitioner's actions of robbing the Education Credit Union on September 23, 2016, did not constitute the federal criminal offense of Credit Union Robbery. Petitioner also appears to assert his guilty plea to the September 23, 2016, credit union robbery offense was not knowing and voluntary because he was not aware that the Government had to prove, as an element of the offense, that the Education Credit Union was federally insured by the NCUA at the time of the robbery.

Again, as discussed above, Petitioner was not actually innocent of the charged offense. Petitioner's robbery of the Education Credit Union — a credit union federally insured by the NCUA at the time of the robbery — violated federal criminal statutes. Petitioner cannot demonstrate his guilty plea was unknowing and involuntary on this basis.

The second superseding indictment charging petitioner with the credit union robbery offense specifically alleged Petitioner, by force, violence or intimidation, took money from the Education Credit Union, "a credit union whose accounts were then insured by the National Credit Union Administration Board." CR ECF No. 55. In addition, the Factual Resume set forth all of the elements of the crime of Credit Union Robbery, specifically identifying the element that "the money belonged to, or was in the possession of Education Credit Union, *federally insured at the time of the taking*." CR ECF No. 109 at 1–2 (emphasis added). The Factual Resume further provided: Petitioner "understands that Education Credit Union, at all times material to this factual resume, was a credit union, the accounts of which were insured by the National Credit Union Administration Board" and that the Government, if required to proceed to trial, would be able to prove such beyond a reasonable doubt. *Id.* By signing the Factual Resume, Petitioner acknowledged the Education Credit Union was federally insured at the time of the robbery as an element of the offense. Furthermore, at

9

his guilty plea hearing, Petitioner admitted under oath that he had received and carefully read a copy of the Second Superseding Indictment, had discussed it with his attorney, and that he understood the nature of the charge to which he intended to plead guilty. CR ECF No. 185. Petitioner also confirmed that before he signed the Factual Resume, he had read it carefully, discussed it with his attorney, and understood it before he signed it. *Id.*

Given the above admissions and Petitioner's failure to provide any reliable, non-conclusory evidence contradicting said admissions, the Court finds Petitioner had knowledge that the Government had the burden to prove, as an element of the offense, that the Education Credit Union was federally insured by the NCUA at the time of the robbery. Petitioner specifically acknowledged this element of the offense, admitted the facts supported this element, acknowledged the Government's burden of proof, and agreed the Government would be able to prove the facts beyond a reasonable doubt. Petitioner's claim that his guilty plea was involuntary and unknowing because he was not aware the Government had the burden to prove the Education Credit Union was federally insured by the NCUA at the time he robbed it is without merit and is **DENIED**.

### E. Insufficient Evidence: Crime of Violence

Petitioner alleges the evidence is insufficient to find that he committed a crime of violence in relation to his gun charges. ECF No. 2 at 7–8. "Federal bank robbery [in violation of Section 2113] constitutes a [crime of violence] under § 924(c)." *United States v. Reece*, 938 F.3d 630, 636 (5th Cir. 2019) ("[B]ecause the least culpable conduct under that statute requires, at a minimum, an implicit threat to use force." (citing *United States v. Cadena*, 728 F. App'x 381, 382 (5th Cir. 2018)). Petitioner committed a substantive violation of Section 2113(a) which is a predicate crime for a conviction under Section 924(c), and thus his conviction on count three is sufficient to uphold his conviction on count four. Thus, Petitioner's final ground is **DENIED**.

10

**CONCLUSION**

Based on the foregoing, the Court **DENIES** the Motion.

**SO ORDERED.**

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE